UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICK GOMEZ,<br>　　　　*Plaintiff,*<br>　　　　*v.*<br>THE METROPOLITAN DISTRICT,<br>　　　　*Defendant.* | Civil No. 3:11cv1934 (JBA)<br><br><br>October 2, 2013 |

**SUBSTITUTED RULING ON OBJECTIONS
TO JUNE 10, 2013 DISCOVERY RULING**

On June 10, 2013, Magistrate Judge Margolis issued a Ruling [Doc. # 50] (the "Ruling"), denying Plaintiff's requests for production and ordering Defendant to produce certain other documents that Defendant claimed were privileged. On June 21, 2013, Defendant filed a timely objection [Doc. # 52] to the Ruling, arguing that Magistrate Judge Margolis erred in ruling that certain documents provided for in camera review were not protected by the attorney-client privilege. On June 24, 2013, Plaintiff also filed a timely objection [Doc. # 53], arguing that the Magistrate Judge erred in denying Plaintiff's request for the production of documents relating to Defendant's hiring practices. For the following reasons, Defendant's objection is overruled and Plaintiff's objection is sustained.

I.　　**Background**

The factual and procedural background of this action is presented in detail on pages one and two of the Ruling, which are incorporated by reference herein. Briefly, Plaintiff Rick Gomez, an African-American who worked as a diversity officer for Defendant Metropolitan District (MDC), filed this employment discrimination action against his former employer under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq*, as amended by the Civil Rights Act of 1981; the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-58 *et seq*. alleging that he was subject to racial discrimination in numerous ways. These include being excluded permanently from involvement in changes to Defendant's affirmative action plans, being repeatedly ignored in hiring and promotion decisions, being denied promotions himself, being treated unfairly when he was assaulted by a larger, white male co-worker, being subject to retaliation when he filed complaints with the Connecticut Commission on Human Rights and Opportunities and the Equal Employment Opportunity Commission, being subjected to verbal insults by his supervisor at two meetings, having his work transferred to an outside consultant, and then being terminated, allegedly for "lack of work" along with fifteen other MDC employees, six of whom had also complained about Defendant's allegedly discriminatory employment practices. (3d Am. Compl. [Doc. # 60] ¶¶ 10–45.)  Plaintiff further alleges that shortly after his termination as Diversity Officer, he applied to be hired for the position of Special Services Administrator and was not hired on account of his race.  (*See id.* ¶¶ 41–47, 50, 58.)

In May 2013, the parties alerted the Court to several discovery disputes, which were referred to Magistrate Judge Margolis for decision.[1]  Each party has filed a timely objection to only one portion of the Ruling.  Defendant asserts that it should be able to redact four lines of text from thirty-three pages of mostly handwritten notes of Attorney

---

[1] *See* Pl.'s Letter to the Honorable Janet Bond Arterton, May 3, 2013 [Doc. # 55] ("Pl.'s May 3 Letter), Def.'s May 20, 2013 Letter to the Honorable Joan G. Margolis ("Def.'s May 20 Letter"), and Def.'s *Ex Parte* Letter to the Honorable Joan G. Margolis, May 31, 2013 [Doc. # 54] (filed under seal) ("Def.'s May 31 Letter").

Erin Ryan.[2]  The handwritten notes memorialize meetings held between September 6, 2011 and October 5, 2011 in which six of Defendant's employees—including three in-house attorneys—discussed an impending need to reduce Defendant's workforce due to the loss of a major contract.  (*See* Def.'s Obj. [Doc. # 52] at 2.)  Defendant asserts that "Attorney Ryan was serving in a dual capacity as both Assistant District Counsel and Interim Director of Human Resources" at the time of these meetings, but that two other members of Defendant's in-house legal team present at the meetings acted purely as attorneys.[3]  (*Id.*)

After reviewing each of the thirty-three pages of this document, the magistrate judge ruled that Defendant could withhold fourteen pages for privilege and redact a portion of one other page.  (*See* Ruling at 13–14.)  The remaining pages had to be produced, because they were "created for an ordinary business purpose by an attorney functioning as a business advisor" on employment matters and did not reflect legal advice

---

[2] *See* Ex. 1 to Def.'s May 31 Letter at 27–59.

[3] Defendant has submitted several pages of transcripts from Attorney Ryan's deposition which it contends demonstrates that "her role in the reduction in force efforts fell directly within the scope of her responsibilities of Assistant District Counsel."  (*See* Def.'s May 31 Letter at 1.)  In fact, in the cited testimony, Attorney Ryan denied that she scheduled the relevant meetings because she was "wearing the hat of HR director at that time," but her role at the meetings was left unclear—at least from the brief excerpt submitted to the Court—and she never explicitly testified that she provided legal rather than human resources-related advice.  (*See* Ryan Dep. Tr., Ex. B to Def.'s May 31 Letter at 61 (explaining that Attorney Ryan scheduled the meetings "[b]ecause when I was hired, one of my roles was to deal with the [loss of funding] and the ramifications of the loss of the contract and this fell within those duties.").)  Earlier in her testimony, however, Attorney Ryan acknowledged that she "participat[ed] in selecting positions to be eliminated as part of [her] HR director responsibilities."  (*See id.*, Ex. A to Def.'s May 20 Letter at 36:10–13.)

or analysis protected by the attorney-client privilege.  (*Id.* at 12–14 (quoting *Leazure v. Apria Healthcare Inc.*, No. 1:09-CV-224 (WMC), 2010 WL 3895727, at *4 (E.D. Tenn. Sept. 30, 2010).)

Defendant now objects only to the production of four lines of text from Attorney Ryan's handwritten notes from an October 4, 2011 meeting.   Attorney Ryan took ten pages of notes on this date (*see* Ex. 1 to Def.'s May 31 Letter at 50–59), and the magistrate judge ordered Defendant to produce all ten pages.   Defendant does not contest the production of these notes beyond the four lines it seeks to redact.[4]   (*See* Def.'s Obj. at 3.)

II.      Standard of Review

"Matters concerning discovery generally are considered 'nondispositive' of the litigation . . . [and] are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted); *see also* Fed. R. Civ. P. 72(a) (district judge must consider objections to a magistrate judge's ruling on a nondispositive matter "and modify or set aside any part of the order that is clearly erroneous or contrary to law").   Under the clearly erroneous standard, a reviewing court may reverse a finding "only if 'although there is evidence to support it, the

---

[4] The four lines of text at issue state as follows:

- Older workers → out

→ 21 day period, 7 day revocation

- Release

- can sign that day

(Def.'s May 31 Letter at 50.)

4

reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed.'" *Mobil Shipping & Transp. Co. v. Wonslid Liquid Carriers Ltd.*, 190 F.3d 64, 67–68 (2d Cir. 1999) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

## II.   Discussion

### A.      Defendant's Objection

Defendant contends that Attorney Ryan's notes memorialize a discussion regarding the benefits that would be offered to terminated employees as part of their severance packages, and "the review and revocation period for the proper release of certain age-related claims." (Def.'s Obj. at 3.)   Defense counsel's brief asserts that attorneys had been retained to create "a draft release" of age-related claims for Defendant's review, which initially contained "a release and revocation period," but "a legal decision was made in-house to remove those provisions (and thereby allow the releases to be signed immediately) because of an assessment of the risk (or lack thereof) of those age-related claims among those who were being laid off."[5]   (*Id.*)   Defendant's memorandum maintains that the four lines of text that it seeks to withhold "memorialize

---

[5] Presumably the "release and revocation" period refers to the requirements of the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), a 1990 amendment to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*   The OWBPA provides for minimum protections before an employee can waive a potential claim under the ADEA to ensure that any such waiver is "knowing and voluntary." 29 U.S.C. § 626(f)(1).   Of relevance to the four lines of text from Attorney Ryan's notes, the OWBPA requires that an individual be "given a period of at least 21 days" to consider any agreement in which a waiver is included, *id.* § 626(f)(F)(i), and the agreement must provide for a seven-day period in which the employee can revoke the agreement following its execution, *id.* § 626(f)(1)(G).   *See generally Powell v. Omnicom*, 497 F.3d 124, 131 (2d Cir. 2007).

the result of a lengthy conversation among counsel as to whether there was sufficient risk of age-related claims and the need for the waiting period."[6]  (*Id.*)  Defendant offers no substantiation in satisfaction of its burden.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance."[7]  *In re Cnty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007).  "Its purpose is to encourage attorneys and their clients to communicate fully and frankly and thereby to promote 'broader public

---

[6] Although Defendant's privilege log entry initially asserted both attorney-client privilege and the protections of the attorney work-product doctrine for the entire compilation of notes (*see* Am. March 20, 2013 Privilege Log of the Metropolitan District, Ex. 6a to Pl.'s May 3, 2013 Letter at 37), Defendant has apparently based its objection to the Ruling on a theory of attorney-client privilege only.  (*See* Def.'s Obj. at 3 ("[The] entry clearly memorializes legal advice" and "the result of a lengthy conversation among counsel . . . .").)  It has not addressed the requirements of attorney-work product or argued that the notes were prepared in anticipation of litigation.  *See Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 145–46 (S.D.N.Y. 2011) ("The work product doctrine . . . does not shield from disclosure everything that a lawyer does. . . . To prevail, the non-producing party must show that the document was prepared because of the prospect of litigation when the preparer face[d] an actual claim or potential claim following an actual event or series of events that reasonably could result in litigation." (quotations omitted) (second alteration in original)).  Accordingly, this argument is waived.  *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives appellate review of a decision in a magistrate judge's Report and Recommendation if the party fails to file timely objections designating the particular issue.").

[7] Federal common law governs the assertions of privilege here for both the federal and pendent state-law claims.  *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) ("[T]he instant action alleges a federal claim based on RICO and state law claims based on pendent and diversity jurisdiction. The evidence sought from Reynolds is relevant to both the federal and state claims. In such situations courts consistently have held that the asserted privileges are governed by the principles of federal law."); *see also* Fed. R. Evid. 501.

interests in the observance of law and administration of justice.'" *Id.* (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).  "At the same time, we construe the privilege narrowly because it renders relevant information undiscoverable; we apply it 'only where necessary to achieve its purpose.'" *Id.* (quoting *Fisher v. United States,* 425 U.S. 391, 403, (1976)).

Although in-house counsel often serve in dual roles as both attorneys and business executives, "a confidential communication between client and counsel is privileged only if it is generated for the purpose of obtaining or providing legal assistance." *In re Cnty. of Erie*, 473 F.3d at 419.  "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.  It requires a lawyer to rely on legal education and experience to inform judgment."  *Id.* (citation omitted).  In determining whether a communication is privileged or unprotected business advice, the Second Circuit has directed courts to "consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id.* at 420.

Given the "broad[]" role of the "complete lawyer," there is no "bright line" between business and legal advice; instead the analysis is context-specific.  *Id.*  As the Second Circuit has explained:

> The complete lawyer may well promote and reinforce the legal advice given, weigh it, and lay out its ramifications by explaining: how the advice is feasible and can be implemented; the legal downsides, risks and costs of taking the advice or doing otherwise; what alternatives exist to present measures or the measures advised; what other persons are doing or thinking about the matter; or the collateral benefits, risks or costs in terms of expense, politics, insurance, commerce, morals, and appearances. So long as the predominant purpose of the communication is legal advice,

> these considerations and caveats are not other than legal advice or
> severable from it.

*Id.* A court cannot determine the predominate purpose of a communication "by quantification or classification of one passage or another; it should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Id.* at 420–21.

As the proponent of privilege, Defendant bears the burden to present sufficient facts to demonstrate the existence of a valid claim of attorney-client privilege.[8] *See von Bulow by Auersperg*, 811 F.2d at 146 ("The law is clear in this circuit that a person claiming the attorney-client privilege has the burden of establishing all the essential elements thereof."). This "burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." *Id.* (quoting *In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965)).

"The burden may be satisfied only by an evidentiary showing supported by competent evidence." *Local 851 of Int'l Bhd. of Teamsters v. Kuehne & Nagel Air Freight, Inc.,* 36 F. Supp. 2d 127, 129 n.2 (E.D.N.Y. 1998). Although the Court has discretion in

---

[8] Even if Defendant had not waived its argument that the attorney work-product doctrine applied, it has presented no evidence to satisfy its burden that the notes were prepared "because of" the prospect of litigation. *Cf. Stopka v. Alliance of Am. Insurers*, No. 95-CV-7487 (SBC), 1996 WL 204324, at *8 (N.D. Ill. Apr. 25, 1996) ("Notes and recordings made by attorneys concerning conversations between the attorneys and Stopka involving Alliance personnel decisions are protected by both the work-product doctrine and attorney-client privilege.").

this context to determine what it will consider competent evidence, it generally includes affidavits by persons with personal knowledge of the relevant facts, exhibits attached to motions and briefs, discovery responses, pleadings, other undisputed facts, and the documents upon which privilege is asserted.   *See id.  Cf. CSC Recovery Corp. v. Daido Steel Co., Ltd.*, 94-CIV-9214 (LAP) (THK), 1997 WL 661122, at *2 (S.D.N.Y. Oct. 22, 1997) ("Daido's privilege log, combined with Ms. Newton's affidavit, providing greater detail about the authors and recipients of the documents and the context in which they were generated, and the documents themselves, which have been submitted for review, are more than sufficient to support the asserted claims of privilege.").   Generally, legal memoranda submitted by counsel are inadequate to satisfy this burden.  *See Local 851*, 36 F. Supp. 2d at 129 n.2; *see also generally* Paul R. Rice, *Attorney-Client Privilege in the United States* § 11:11.

Defendant has not submitted such competent evidence for the Court to undertake this "dynamic[]" analysis of the four lines of text that it seeks to redact.[9]   Instead, Defendant asserts in its legal memorandum that this portion of Attorney Ryan's October 4, 2011 notes—which generally concerned what benefits would be offered to terminated employees—reflected "a lengthy conversation among counsel" regarding "a legal decision to remove" a "release and revocation period" from offers that would apparently be presented to terminated employees who might bring an ADEA claim.  (Def.'s Obj. at 3.)

---

[9] In addition to deposition transcripts submitted by Defendant, properly before the Court as competent evidence is Defendant's original privilege log describing the notes as "memorializing meetings with District Counsel, Assistant District Counsel and others re: staff reductions" (Ex. 6a to Pl.'s May 3 Letter at 3.), which provides little guidance to the Court's analysis.

Even if the Court were to exercise its discretion to accept Defendant's explanation submitted in its legal memorandum, rather than by competent evidence, it is still not clear from the brief and conclusory assertions therein nor from a review of Attorney Ryan's four lines of text and the surrounding pages that the relevant text reflects legal advice rather than business considerations related to Defendant's layoffs.  While the middle two lines of Attorney Ryan's notes appear to recite the basic requirements of the OWBPA for a waiver of an ADEA claim, it is not clear from the face of the document that in taking these notes Attorney Ryan was recording the "application of legal requirements or principles" *by an attorney* as opposed to just recording factual matters (perhaps articulated by a non-lawyer present at the meeting).  *See Marsh v. Safir*, No. 99-CIV-8605 (JGK) (MHD), 2000 WL 460580, at *12 (S.D.N.Y. Apr. 20, 2000) ("An attorney's performance of a function that is normally done by a non-attorney is not covered by the attorney-client privilege.").

In fact, Defendant has not identified—through competent evidence or its briefing—the parties to this particular excerpt.  There were several non-attorneys present at this meeting (*see* Ryan Dep. Tr. at 61), and there is no evidence to establish that the relevant notations reflect communications between a client and an attorney, which is a basic requirement of the privilege.  *See In re Cnty. of Erie*, 473 F.3d at 419.  The mere recitation of a basic legal requirement in the context of a business discussion regarding what benefits would be offered to terminated employees is not necessarily privileged. Notably in light of the "dynamic[]" evaluation of the entire document relevant to a privilege determination, *see id.* at 420, Defendant does not object—beyond the four lines—to the Ruling's determination that all ten pages of Attorney Ryan's notes from this

meeting are not privileged.  Defendant simply has not presented adequate evidence for the Court to determine that these four lines of text—from ten pages of concededly non-privileged notes—are privileged despite having the burden to do so.  Accordingly, the magistrate judge's ruling was not contrary to the law or clearly erroneous.  Defendant's objection is overruled.

###    B.        Plaintiff's Objection

Plaintiff's claim of racial discrimination is predicated in part on Defendant not rehiring Plaintiff when he applied for the position of Special Services Administrator shortly after he was terminated by Defendant as Diversity Officer.  (*See* 3d Am. Compl. ¶¶ 41–47, 50, 58.)  Plaintiff has advanced a theory that he was a victim of a "suspected 'pattern and practice'" in which  Defendant was "filling open non-union positions with White employees on an interim basis, and then appointing that individual to fill the position on a permanent basis, so as to disadvantage African American employees who apply for the permanent opening."  (Pl.'s May 3 Letter at 3–4.)  In support of this claim, Plaintiff has requested data from Defendant regarding employees who were hired to non-union positions initially on an interim basis and then later on a permanent basis.  (*See* Def's Objs. to Pl's Second Set of Requests for Production, Ex. 4 to Pl's May 3 Letter, at 15–18.)

Defendant has objected to the requests as overbroad and irrelevant (*id.*), arguing that Plaintiff has not adequately alleged that he was the victim of "a purported pattern and practice of discrimination . . . concerning the interim appointment procedure." (Def.'s May 20 Letter at 1.)  Defendant also asserted that "an individual cannot maintain a private, non-class pattern or practice claim," which is correct as a general proposition, as

such claims can be brought only by the government and class-action plaintiffs.  *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 147 (2d Cir. 2012).  On that legal basis, the Ruling determined that the discovery sought by Plaintiff was "irrelevant." (Ruling at 4–5.)

However, Plaintiff's objection clarifies that he is not advancing a "pattern and practice claim," but seeks evidence regarding Defendant's suspected pattern and practice of hiring interim white employees in order to advance his hiring claim, i.e., that he was a victim of this pattern and practice.[10]  (*See* Pl.'s May 3 Letter at 3–4; Pl.'s Obj. at 5.)  As the Second Circuit has made clear, the type of evidence sought by Plaintiff "may be highly relevant to an individual disparate treatment or to a disparate impact claim."[11]  *Chin*, 685 F.3d at 150; *see also id.* at 147 ("We emphasize, however, that evidence that the Port

_____

[10] According to Plaintiff, Defendant first advanced its legal argument the afternoon before the parties' conference call with Magistrate Judge Margolis, and thus the magistrate judge did not have the benefit of complete briefing on this issue, nor did she have Plaintiff's clarification in his amended complaint filed after the Ruling that he was asserting a claim for discrimination in hiring in addition to claims related to his original termination.  (*See* Order Granting Consent Motion to File 3d Am. Compl. [Doc. # 61].) It is only on the basis of Plaintiff's post-Ruling clarification and the change in circumstances occasioned by the filing of the Third Amended Complaint that the Court determines that Plaintiff's request for production is now proper.

[11] Defendant now acknowledges that evidence of a pattern and practice may be relevant to an individual discrimination claim, but asserts that Plaintiff is improperly seeking to advance "new theories that have not been alleged under a fair reading of the complaint."  (Reply [Doc. # 58] at 2–3.)  As discussed above, however, Plaintiff uses "pattern or practice" in the "ordinary sense of those words, rather than in the technical sense describing a theory of liability for discrimination."  *Chin*, 685 F.3d at 147.  Thus, the material sought by Plaintiff is a method of proof, not a theory of liability, to support his individual claim of discrimination in hiring.  This claim has now been plainly alleged. (*See* 3d Am. Compl. ¶¶ 41–47, 50, 58.)

Authority engaged in a pattern or practice of discrimination—in the ordinary sense of those words, rather than in the technical sense describing a theory of liability for discrimination—remains relevant in assessing whether the plaintiffs proved discrimination using the individual disparate treatment and disparate impact methods of proof."). Accordingly, in light of Plaintiff's clarification by way of his Third Amended Complaint, which was not before the magistrate judge when she considered the relevance of the documents sought, Plaintiff's objection is sustained and Part I of the Ruling is modified to require Defendant to produce documents in accordance with Plaintiff's Requests for Production Nos. 8 and 10.[12]

---

[12] Plaintiff has offered to narrow its requests considerably. (*See* Pl.'s May 3 Letter at 4–5 & Ex. 5; Pl.'s Obj. at 5 n.3.) There is no indication in the record that Defendant has responded to this offer, but now that its obligations to produce documents in response to these requests is established, the Court leaves it to the parties to negotiate the appropriate scope of Plaintiff's request. *See Bd. of Regents of Univ. of Nebraska v. BASF Corp.*, No. 4:04-CV-3356 (DLP), 2007 WL 3342423, at *5 (D. Neb. Nov. 5, 2007) ("The overriding theme of recent amendments to the discovery rules has been open and forthright sharing of information by all parties to a case with the aim of expediting case progress, minimizing burden and expense, and removing contentiousness as much as practicable. Compliance with these changes has placed—on counsel—the affirmative duties to . . . cooperatively plan discovery with opposing counsel." (citations omitted)).

**IV.     Conclusion**

For the foregoing reasons, Defendant's objection [Doc. # 52] to the Ruling is OVERRULED, Plaintiff's objection [Doc. # 53] is SUSTAINED and Part I of the Ruling is MODIFIED to require Defendant to produce documents in accordance with Plaintiff's Requests for Production Nos. 8 and 10.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 2nd day of October, 2013.

14