UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RICK GOMEZ,<br>　　*Plaintiff*,<br>　　*v.*<br>THE METROPOLITAN DISTRICT,<br>　　*Defendant*. | Civil No. 3:11cv1934 (JBA)<br><br>November 27, 2013 |

**RULING DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF THE SUBSTITUTED
RULING ON OBJECTIONS TO THE
JUNE 10, 2013 DISCOVERY RULING**

Plaintiff Rick Gomez brought this employment discrimination action against his former employer, Defendant the Metropolitan District, alleging numerous instances of racial discrimination, including the denial of promotions, retaliation for filing employment discrimination complaints, and termination, allegedly for "lack of work" along with fifteen other MDC employees, six of whom had also complained about Defendant's discriminatory employment practices. (3d Am. Compl. [Doc. # 60] ¶¶ 10–45.)  Plaintiff further alleges that shortly after his termination as Diversity Officer, he applied to be hired for the position of Special Services Administrator and was not hired on account of his race.  (*See id.* ¶¶ 41–47, 50, 58.)

On October 2, 2013, the Court issued a Substituted Ruling [Doc. # 70] on cross objections to Magistrate Judge Margolis's June 10, 2013 Ruling on Discovery Issues [Doc. # 50] (the "Discovery Ruling"), and ordered Defendant to produce documents related to its hiring practices and documents that had been withheld on the basis of attorney-client

privilege. Defendant now moves [Doc. # 71] for reconsideration. For the reasons that follow, Defendant's motion is denied.

I.  **Legal Standard**

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)1. The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

II.  **Discussion**

    A.  **Plaintiff's Request for Documents Related to Defendant's Hiring Practices**

In the Substituted Ruling, the Court ordered Defendant to produce documents in response to Plaintiff's document requests. In a May 3, 2013 letter to the Court, Plaintiff had explained that he had requested "documents related to defendant's appointments of non-union personnel to fill positions on an interim basis," because such documents were

relevant "to pattern and practice allegations included in his Complaint." Plaintiff asserted that he was "aware of allegations by other employees that the defendant has a practice of filling open non-union positions with White employees on an interim basis, and then appointing that individual to fill the position on a permanent basis, so as to disadvantage African American employees who apply for the permanent opening." (Pl.'s Letter to the Hon. Janet Bond Arterton, May 3, 2013 [Doc. # 55] at 3–4.) Plaintiff explained that the "Special Services Administrator position that the plaintiff sought and was denied in late 2011 would fit squarely within this suspected 'pattern and practice' since Ms. McLaughlin," who was hired for the position over Plaintiff, "is White and was first placed into the position on an interim basis." (*Id.* at 4.)

Defendant objected to these requests on the grounds that "plaintiff has not alleged that he was adversely affected by a purported pattern and practice of discrimination and/or retaliation concerning the interim appointment procedure. Instead he has alleged that he was not treated fairly during the interview and that he was more qualified than the white woman who was eventually selected for the Special Services Administrator position for which he applied." (Def.'s Letter to the Hon. Joan G. Margolis, May 20, 2013 at 1–2 (internal citations omitted).) Defendant contended that "the mere fact that [Plaintiff] has allegedly encountered a pattern [and] practice of purported racial discrimination does not open the door to allow him carte blanche discovery on any unrelated policy, practice or procedure allegedly employed by the District in the course of its business." (*Id.* at 2.) Defendant asserted that even if the Court interpreted Plaintiff's "allegations broadly to include a purported pattern and practice concerning the interim appointment process," his claim failed because individuals could not maintain a private, non-class pattern or

practice claim. (*Id.*) Magistrate Judge Margolis agreed that Plaintiff could not bring a private, non-class pattern or practice claim and, on that basis, ruled that the discovery sought by Plaintiff was irrelevant. (Discovery Ruling at 4–5.)

Plaintiff objected to the Discovery Ruling, contending that on a May 21, 2013 conference call, his counsel had explained to Magistrate Judge Margolis that he was "not asserting a separate individual 'pattern and practice claim' at all – but rather is relying upon relevant evidence related to a pattern and practice to support his individual disparate treatment claim." Accordingly, Plaintiff contended that the "case law relied upon by the defendant—and subsequently by Magistrate Judge Margolis in her Ruling—while an accurate statement of the law, is totally inapposite here." (Pl.'s Obj. to Discovery Ruling [Doc. # 53] at 5.)

The Court agreed with the general proposition Defendant cited—that private, non-class plaintiffs could not assert a pattern and practice claim, but held that this proposition was "beside the point," because Plaintiff was not advancing such a claim. "Instead, Plaintiff seeks evidence regarding Defendant's suspected pattern and practice of hiring interim employees in order to advance his individual claim, i.e., that he was a victim of this pattern and practice." (Sub. Ruling at 12.) Given that "the type of evidence sought by Plaintiff 'may be highly relevant to an individual disparate treatment or to a disparate impact claim,'" the Court sustained Plaintiff's objection and ordered Defendant to produce responsive documents. (*Id.* at 12 (quoting *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012).)

In doing so, the Court noted in a footnote that Plaintiff "clarifi[ed] in his [third] amended complaint filed after the [Discovery] Ruling that he was asserting a claim for

4

discrimination in hiring in addition to claims related to his original termination." (Sub. Ruling at 12 n.10.) The Court explained that it was "only on the basis of Plaintiff's post-[Discovery] Ruling clarification and the change in circumstances occasioned by the filing of the Third Amended Complaint that the Court determines that Plaintiff's request for production is now proper." (*Id.*)

Defendant now contends that the Third Amended Complaint was only intended to correct scrivener's errors and "narrow—not expand—the scope of the existing claims" by eliminating one of the three adverse employment actions alleged and leaving only claims relating to Plaintiff's termination and the failure to rehire him. (Mem. Supp. Mot. for Reconsideration at 7.) As a result, Defendant contends that the "Third Amended Complaint was not intended to serve the purpose assumed by the Court when it issued its Substituted Ruling on Discovery" because Plaintiff "has not made *any* changes to the pattern and practice allegations originally alleged in the Second Amended Complaint." (*Id.*) Instead, "the material allegations have remained exactly the same as those relied upon by Judge Margolis, and therefore this Court was mistaken in believing otherwise and reversing her on that basis." (*Id.* at 8.)

Plaintiff maintains that he has always alleged a failure to rehire claim and that to "the extent that the Court understood the plaintiff's Third Amended Complaint to have *added* the failure to rehire claim—for the first time through that amendment—then the defendant is correct in pointing that misunderstanding out to the Court." (Pl.'s Mem. Opp'n Mot. for Reconsideration [Doc. # 73] at 2–3.) Plaintiff maintains that despite any "misunderstanding," the Court correctly ordered Defendant to produce the requested discovery based on the allegations of the Second Amended Complaint. While the Third

Amended Complaint did not add such allegations, it was intended to make "it explicit that the failure to rehire was one of two adverse actions that the plaintiff was still pursuing . . . . However, as footnote 10 of the Court's Substituted Ruling implies, it may not have been obvious to Judge Margolis at the time she issued her Discovery Ruling that the plaintiff's discrimination and retaliation claims included a failure to rehire claim since, admittedly, the adverse actions were not as clearly articulated in the pre-amended complaint as they should have been." (*Id.* at 3.)

In referring to Plaintiff's "clarification" in the Third Amended Complaint, the Court did not intend to imply that it added new allegations that were not already pled in the Second Amended Complaint. While the Second Amended Complaint contained the factual basis to support a failure to rehire claim (*see* 2d Am. Compl. [Doc. # 28] ¶ 44 ("On information and belief, the defendant selected a white woman for the Special Service Administrator position who was less qualified than the plaintiff."), Counts One, Three, Four, and Five referred generically to "the adverse employment actions described above, including, *but not limited to*, the decision to terminate the plaintiff's employment" (*id.* ¶¶ 47, 55, 59, 64 (emphasis added)). The Third Amended Complaint "clarified" this deficiency by specifying that a failure to rehire was among the "adverse employment actions" originally pleaded.[1] (*See* 3d Am. Compl. ¶¶ 46, 50, 55, 58, 63.)

---

[1] In an email between counsel cited by Defendant, Plaintiff's counsel explained that the Third Amended Complaint was intended "to correct a couple of drafting/scrivener's errors . . . and also to clarify that we are . . . pursuing the . . . decision not to hire the plaintiff for the Special Services Administrator position as [an] adverse action[]." (Email from Nicole M. Rothgeb to Kevin C. Shea et al., Ex. B. to Def.'s Mem. Supp. Mot. for Reconsideration [Doc. # 72-2] at 2.)

Accordingly, the parties are correct that the Third Amended Complaint did not expand Plaintiff's claims. To the extent that the Substituted Ruling implied that the Third Amended Complaint was the only basis for sustaining Plaintiff's Objection, this was in error. The Second Amended Complaint contained the factual basis for such a failure to rehire claim and Plaintiff explained the nature of this claim in his Objection to the Discovery Ruling, filed before the Third Amended Complaint. What the Court meant to convey was that while under the Second Amended Complaint the discovery sought by Plaintiff was relevant, its relevancy was not immediately apparent until the nature of Plaintiff's wrongful termination claim was clarified (but not added) in his Objection to the Discovery Ruling and the Third Amended Complaint.

Nevertheless, the Court's reasoning in ordering Defendant to produce responsive documents applies notwithstanding any confusion regarding the Third Amended Complaint. On the basis of the allegations in the Second Amended Complaint, Plaintiff can be understood to have sought evidence regarding Defendant's suspected hiring practice in order to augment his existent failure to rehire claim, i.e., that he was a victim of this practice.[2] (*See* Pl.'s May 3 Letter at 3–4; Pl.'s Obj. to Discovery Ruling at 5.) As the Second Circuit has made clear, the type of evidence sought by Plaintiff "may be highly

---

[2] As the Court explained:

> Plaintiff uses "pattern or practice" in the "ordinary sense of those words, rather than in the technical sense describing a theory of liability for discrimination." Thus, the material sought by Plaintiff is a method of proof, not a theory of liability, to support his individual claim of discrimination in hiring.

(Substituted Ruling at 12 n.11 (quoting *Chin*, 685 F.3d at 147.)

7

relevant to an individual disparate treatment or to a disparate impact claim." *Chin*, 685 F.3d at 150. Therefore, Defendant's Motion for Reconsideration of this portion of the Court's Substituted Ruling is DENIED.

### B. Defendant's Assertion of Attorney-Client Privilege

Defendant next argues that in overruling its objection to producing documents on the basis of attorney-client privilege, the Court "apparently misunderstood" that Defendant "was not intending to offer 'new' evidence that Judge Margolis may have missed, nor was it attempting to show the existence of a privilege based on a new legal theory that had been missed. Instead Defendant merely intended to show why these four lines of text should have been considered privileged in accordance with the analysis that Judge Margolis herself applied to the remaining documents subject to her in camera review."[3] (Def.'s Mem. Supp. Mot. for Reconsideration at 10.)

The Court's ruling was not predicated on Defendant's failure to offer "new evidence" to support its objection, but rather it was based on Defendant's failure to present any evidence at all in support of its conclusory assertions of privilege. As the Court explained, Defendant had the burden to present sufficient facts to Magistrate Judge Margolis and to this Court to sustain its claim of attorney-client privilege, and this burden could not be discharged by conclusory assertions in its legal memorandum. Rather, Defendant was required to present competent evidence in the first instance to support its claim of privilege. (*See* Sub. Ruling at 8–9.) This Defendant failed to do.

---

[3] Plaintiff "does not believe that reconsideration is warranted" of the Court's privilege analysis, but declined to brief the topic, because the material at issue "is not material to any issue in the case." (Pl.'s Mem. Opp'n Mot. for Reconsideration at 1 n.1.)

Defendant did not submit an affidavit from Attorney Ryan to provide context regarding her notes to support its privilege assertion. Context was particularly important here, because Magistrate Judge Margolis determined that all ten pages of Attorney Ryan's handwritten notes from the relevant meeting reflected "simply fact finding" rather than containing "some degree of [legal] analysis," and thus were not privileged. (Discovery Ruling at 12.) Defendant did not object to this determination beyond asserting that the four lines of text from these ten pages were privileged. But it adduced no evidence to discharge its burden. Defendant continues to simply argue that the four lines of text are actually privileged, rather than attempting to prove that it is so. In doing so, Defendant "seeks solely to relitigate" in the same flawed manner "an issue already decided," *Shrader*, 70 F.3d at 25, and does not set forth any valid grounds for reconsideration.

### III.    Conclusion

For the foregoing reasons, Defendant's Motion [Doc. # 71] for Reconsideration is DENIED. Defendant is ORDERED to produce documents responsive to Plaintiffs' Request for Production Nos. 8 and 10 by December 23, 2013.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of November, 2013.