UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICK GOMEZ,
    *Plaintiff*,
    *v.*
THE METROPOLITAN DISTRICT,
    *Defendant*.

Civil No. 3:11cv1934 (JBA)

June 18, 2014

**RULING ON DEFENDANT'S MOTION FOR RECONSIDERATION**

Defendant the Metropolitan District moves [Doc. # 99] for partial reconsideration of the Court's Order [Doc. # 95] on Defendant's Motion for Summary Judgment (the "Order") denying Defendant's motion for summary judgment on Plaintiff's retaliatory discharge claim.[1] For the reasons that follow, Defendant's motion is denied.

**I.   Legal Standard**

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7(c)1.  The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478).  This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court

---

[1] The Court granted summary judgment to Defendant on Plaintiff's discriminatory termination and failure to rehire claims and his retaliatory failure to rehire claim.

overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision.  *Id.*

II.     **Discussion**

Defendant advances a number of grounds for reconsideration, primarily focusing on the Court's analysis of statistical data that Plaintiff Rick Gomez presented in support of his retaliatory discharge claim.  Mr. Gomez offered statistical evidence showing that five out of the fourteen (36%) non-union employees included in the reduction in force ("RIF") had previously filed a complaint or otherwise opposed discrimination.  Additionally, Plaintiff relied upon a related statistic that the only other exempt and excluded employee who had previously complained of discrimination was terminated in January 2011, and thus, after the October 2011 layoffs, all six of the non-union employees who had complained of discrimination were terminated.[2]  (*See* Order at 25.)

---

[2] For the first time in its Reply [Doc. # 104], Defendant submits an affidavit (*see* Zaik Aff. [Doc. # 104-2]) to the effect that the document it created and produced during discovery listing all of the non-union employees who had previously filed an employee discrimination complaint against the District (*see* List of Exempt and Excluded Nonunion Employees, Ex. 20 to Pl.'s Loc. R. 56(a)2 Stmt. [Doc. # 81]) contained certain errors undermining Plaintiff's "claimed statistic that 100%" of the non-union employees who had complained of discrimination were terminated by October 2011.  (Reply at 10 n.12 (emphasis in original).)  Evidence is "newly discovered" so as to justify reconsideration only where it is "evidence that could not have been discovered earlier." *Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003); *see also Palmer v. Sena*, 474 F. Supp. 2d 353, 355 (D. Conn. 2007) ("A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency of the underlying motion." (internal citations and quotation marks omitted)).  Defendant's erroneous description of its own workforce based on its own data was plainly

The Court conducted an extensive analysis of the parties' arguments regarding the significance of these statistics and the case law regarding whether the admittedly small sample size was sufficient (*see id.* at 25–29), and concluded that "the statistical evidence proffered by Plaintiff is relevant circumstantial evidence that could support the inference that Defendant used the RIF as an occasion to 'clean house' of all employees who had previously engaged in protected activity" (*id.* at 28).

Applying *Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 876 (2d Cir. 1997), the Court held that "such statistical evidence is not sufficient on its own to support an inference of retaliatory motive, but with Plaintiff's other evidence—inconsistencies in Defendant's explanations about the reduction of Gomez's responsibilities and the process used to select him for elimination—Plaintiff has produced minimally sufficient evidence to support an inference of retaliatory motive." (*Id.*)

Defendant now contends that "[c]ontrary to both the data and controlling law, the Court concludes that the plaintiff's blanket and inaccurate statistics are relevant circumstantial evidence." (Def.'s Mem. Supp. [Doc. # 99-1] at 2, 13.) Defendant's further argument in this regard is based on an extensive discussion of the nature of Plaintiff's statistical evidence compared to that approved by the Second Circuit in *Stratton*. (*See id.* at 2–4, 16–18.) However, in its Order, the Court discussed and applied *Stratton* (*see*

---

evidence available to Defendant during the pendency of the summary judgment motion and no excuse is offered for presenting it for the first time in Defendant's reply brief, and thus the Court declines to consider it. *See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 387 (S.D.N.Y. 2010) ("It is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden.").

Order at 27–28) and considered and rejected Defendant's argument that Plaintiff's statistical data was not sufficient or reliable.[3] Defendant also again contests the adequacy of the sample size and contends that the Court "improperly concludes that *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261 (6th Cir. 2010) is inapplicable here." (Def.'s Mem. Supp. at 10.)

The Court has already addressed why it considers the Sixth Circuit's holding in *Schoonmaker* to be inapplicable here. (*See* Order at 28 n.10.) Defendant merely seeks to relitigate issues and the significance of authorities that the Court has already extensively addressed and does not set forth any valid grounds for the Court to reconsider its conclusion. *See Shrader*, 70 F.3d at 257; *Morales v. Quintiles Transnational Corp.*, 25 F.

---

[3] Defendant's contention that the Court improperly "adopts the plaintiff's sweeping, inaccurate allegation that his data is comprised solely of protected activity that occurred over a short period of time prior to the October 2011 RIF" (Def.'s Mem. Supp. at 4) is itself inaccurate, as the Court discussed exactly when each of these employees engaged in protected activity (*see* Order at 9–11). For the same reason, Defendant's contention that Plaintiff has "now concede[d] that the Court misunderstood the purported probative value of [Plaintiff's] claimed statistics" is also inaccurate. (Reply at 7.) Defendant's argument that this statistical evidence was insufficient "at the *pretext stage* to infer retaliatory intent" because there was no temporal proximity between the RIF and the adverse actions of the employees in this data set reflects Defendant's confusion regarding the nature of this evidence. (*See* Def.'s Mem. Supp. at 5.) Plaintiff established a prima facie case as to himself based solely on the three-week temporal connection between his request for a release of jurisdiction from the CHRO and his termination. (*See* Order at 18.) The former District employees in Plaintiff's data set are not plaintiffs in this case and the prima facie analysis is simply not applicable to them. Rather, the statistical evidence was offered as circumstantial evidence that Plaintiff was a victim of the District's decision to "clean house." (*Id.* at 28; *see also Stratton*, 922 F. Supp. 857, 864 n.5 (S.D.N.Y. 1996) ("[Other employment] decisions . . . made . . . over only a four year period, were . . . properly admitted as circumstantial evidence of improper motive [as to the plaintiff]."), *aff'd* 132 F.3d 869 (2d Cir. 1997).

4

Supp. 2d 369, 372 (S.D.N.Y. 1998) ("[A motion for reconsideration] is not a substitute for appeal . . . .").

Next, Defendant contends that the "Court also directly contradicts controlling law when it concludes that the plaintiff's request for a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities (CHRO) is a protected activity independent of the plaintiff's filing in June 2010 of his CHRO complaint." (Def.'s Mem. Supp. at 6.)  Plaintiff asserted that his October 7, 2011 termination was retaliation for his July 2010 CHRO complaint and an internal complaint that he filed in March 2011 alleging that his direct supervisor had subjected him to ongoing hostile treatment.  In support of this claim, Plaintiff noted that his job responsibilities were eliminated just three weeks after the District learned that he sought a release of jurisdiction from the CHRO and was pursuing his complaint in court, and he was selected for termination shortly thereafter.  (Order at 17–18.)

Citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), Defendant had "asserted that Mr. Gomez could not rely on his September 15, 2011 request for a release of jurisdiction from the CHRO three weeks before his termination to support a showing of temporal proximity, because the relevant protected activity was his filing of the CHRO complaint in June 2010, not the routine step of obtaining a release of jurisdiction." (Order at 18–19.)  Analyzing *Breeden*, the Court concluded that it was inapposite to these facts because "unlike in *Breeden,* Plaintiff does not rely upon his request for a release of jurisdiction from the CHRO to establish [his employer's] knowledge" of his complaint and instead "contends that this request constituted separate protected activity which indicated he was seeking enhanced remedies only available in state or federal court." (*Id.*

5

at 19.)  "By contrast in *Breeden*, the Supreme Court relied upon the fact that the plaintiff played no role in the issuance of the right-to-sue letter."  (*Id.* at 19–20.)

Applying *Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002), the Court noted that "[s]ince *Breeden* was decided, the Second Circuit has held that the intermediate steps that a plaintiff actively pursues in support of a discrimination complaint—not just the filing of such charges themselves—are activities protected from retaliation."  (Order at 20.)  Defendant contends that the Court "directly contradicts" *Breeden* (Def.'s Mem. Supp. at 6), and "misreads" *Treglia* (*id.* at 7), but again this is pure relitigation of matters that the Court has already discussed and ruled upon (*see* Order at 18–20) and Defendant does not set forth any valid grounds for the Court to reconsider its conclusion.  That Defendant disagrees with the Court's analysis does not make it a proper ground for reconsideration.

Finally, Defendant contends that the Court "overlooked controlling law and improperly failed to apply the 'but-for' causation requirement" announced by the Supreme Court in *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) and "misread[] *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845–46 (2d Cir. 2013) to suggest that the heightened standard for retaliation claims pursuant to *Nassar* does not alter the district court's analysis at summary judgment."  (Def.'s Mem. Supp. at 13.)  Contrary to Defendant's assertion, however, the Court explicitly applied the *Nassar* "but for" standard to Plaintiff's Title VII claims.  (*See* Order at 17.)  In discussing uncertainty regarding whether the *Nassar* formulation applied under the Connecticut Fair Employment Practices Act ("CFEPA"), the Court noted that "the Second Circuit has

suggested that *Nassar* does not alter the district court's analysis at summary judgment." (Order at 17 n.6.)

Defendant contends that if the Court had applied the "but for" standard to Plaintiff's Title VII claim, this discussion of *Nassar* would not have been necessary, because Plaintiff would have necessarily satisfied the less demanding "substantial or motivating factor" standard. (*See* Reply at 2 n.3.) Although Defendant is correct that Plaintiff would have necessarily satisfied the less demanding standard on summary judgment if he presented evidence from which a jury could infer but-for causation, the point was that even if the less demanding standard still applied under CFEPA and different standards were presented to the jury under CFEPA and Title VII, it would be up to the jury, not the Court on summary judgment, to determine based on Plaintiff's evidence if either or both of these standards had been met. *See Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 328 (2d Cir. 2011) ("[B]ut-for causation is an issue of fact for the jury, not, where there is evidence to support a finding of causation, a matter to be decided by the court on a motion for summary judgment." (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

Defendant further contends that in *Zann Kwan*, "the Second Circuit *only* held that 'the 'but-for' causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie stage* on summary judgment or at trial indirectly through temporal proximity." (Def.'s Mem. Supp. at 13 (quoting *Zann Kwan*, 737 F.3d at 845 (emphasis in original).) Contrary to Defendant's assertion, however, this was not the Second Circuit's "only" discussion of *Nassar*. Rather, the Second Circuit went on to quite clearly discuss the impact of *Nassar* after a prima facie case has been established:

7

> Prior to the Supreme Court's decision in *Nassar,* in order to demonstrate pretext, a plaintiff was only required to demonstrate that a retaliatory motive was "a substantial or motivating factor behind the adverse action[,]" rather than a "but—for" cause of the adverse action. . . . However, a plaintiff's injury can have multiple "but—for" causes, each one of which may be sufficient to support liability. Requiring proof that a prohibited consideration was a "but-for" cause of an adverse action does not equate to a burden to show that such consideration was the "sole" cause.
>
> In this case, the parties have put forward several alleged causes of the plaintiff's termination: retaliation, unsuitability of skills, poor performance, and inappropriate behavior. The determination of whether retaliation was a "but—for" cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact. A jury should eventually determine whether the plaintiff has proved by a preponderance of the evidence that she did in fact complain about discrimination and that she would not have been terminated if she had not complained about discrimination.

*Zann Kwan*, 737 F.3d at 846 n.5 (internal citations omitted) (first alteration in original). Accordingly, Defendant has presented no grounds for the Court to reconsider its conclusion.

### III.   Conclusion

For the reasons set forth above, Defendant's Motion [Doc. # 99] for Reconsideration is DENIED.

IT IS SO ORDERED.

_____/s_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of June, 2014.